IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 20–55–M–DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| GRADY HAROLD SULLIVAN, JR., | |
| Defendant. | |

On December 2, 2020, Defendant Grady Harold Sullivan, Jr. was charged by single-count indictment with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) It is alleged that Sullivan had a 2006 felony conviction in the state of Montana and that, with knowledge of that conviction, possessed a firearm "on or about and between July 2020 and October 2020." (*Id.*) Sullivan seeks to dismiss the indictment on the ground that he was not a prohibited person at that time. (Doc. 13.) That motion is denied.[1]

---

[1] Sullivan requested oral argument "if necessary" to resolve the motion. (*See* Doc. 14 at 6.) Because the factual record as filed is sufficient to resolve the motion and the Court did not rely on the emails proffered by the government (though they are consistent with Montana's statutory language and the Rules of Evidence arguably do not foreclose their admission), the motion is denied without hearing.

## ANALYSIS

Sullivan argues that his right to possess firearms was restored under Montana law so his 2006 felony cannot serve as a predicate offense for his conviction under § 922(g)(1). He is wrong.

Whether a prior conviction qualifies as a predicate felony under § 922(g)(1) is a purely legal question. *United States v. McAdory*, 935 F.3d 838, 842 (9th Cir. 2019). For the purposes of § 922(g)(1),

> What constitutes a conviction of . . . a crime [punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). Accordingly, the Ninth Circuit has adopted a three-step process for determining whether a state conviction is invalidated for the purposes of the federal felon in possession statute:

> 1. Use state law to determine whether the defendant has a "conviction." If not, the defendant is not guilty. If so, go to step 2.
>
> 2. Determine whether the conviction was expunged, set aside, the defendant was pardoned, or the defendant's civil rights were restored. If not, the conviction stands. If so, go to step 3.
>
> 3. Determine whether the pardon, expung[e]ment, or restoration of civil rights expressly provides that the defendant may not ship, transport, possess, or receive firearms. If so, the conviction stands. If not, the defendant is not guilty.

*Van der Hule v. Holder*, 759 F.3d 1043, 1046 (9th Cir. 2014) (quoting *United States v. Valerio*, 441 F.3d 837, 840 (9th Cir. 2006)); *see also United States v. Goodman*, 2020 WL 224554, *1 (D. Mont. Jan. 15, 2020).

At step one, it is uncontested that Sullivan has a Montana felony conviction from 2006. (*See* Doc. 13-1.) At step two, however, the parties dispute whether he had discharged that conviction during the timeframe alleged in the indictment and therefore had his civil rights restored. The answer to this question is dispositive of Sullivan's prohibited person status as, at step three, he does not appear to be otherwise prohibited from possessing a firearm under Montana law. *See Goodman*, 2020 WL 224554, at *2; *Caron v. United States*, 524 U.S. 308, 310 (1998).

Under Montana law, "[f]ull rights are restored by termination of state supervision for any offense against the state." Mont. Const. art. II, § 28(2); *see* Mont. Code Ann. § 46–18–801(2) ("Except as provided in the Montana constitution, if a person has been deprived of a civil or constitutional right by reason of conviction for an offense and the person's sentence has expired or the person has been pardoned, the person is restored to all civil rights and full citizenship, the same as if the conviction had not occurred."). Here, Sullivan argues that his 2006 conviction and attendant revocation sentences expired on March 2, 2020. (Doc. 14 at 3.) That argument hinges on a finding that the

3

Montana Department of Corrections ("DOC") lacks the authority to place persons on "conditional release" in the community as part of a custodial sentence. Though creative, Sullivan's position lacks merit.

On January 31, 2006, Sullivan received a six-year deferred sentence in the Montana Twentieth Judicial District Court, Lake County, for issuing a bad check in violation of § 45–6–316, Mont. Code Ann. (Doc. 13-1.) On January 12, 2011, that deferred sentence was revoked, and Sullivan was committed to the DOC for a term of 10 years, with 8 years suspended. (Doc. 13-2.) The court recommended that he be "considered for placement at Connection Corrections and pre-release programs if deemed appropriate by the [DOC]." (*Id.* at 2.) Sullivan was expected to discharge his prison sentence on January 2, 2013 and the suspended sentence on December 31, 2020. (*See* Doc. 13-5.) The DOC placed him on "conditional release" on March 5, 2012. (Doc. 13-6.) Sullivan therefore argues that his 8-year suspended sentence began running at that time, causing it to expire ten months early, on March 2, 2020. (Doc. 14 at 3.) That argument is unpersuasive.

Montana's correction policy emphasizes alternatives to imprisonment for nonviolent offenders. *See* Mont. Code Ann. § 46–18–101(2)(d), 3(f). Accordingly, a judge may impose a sentence, such as here, that includes a "commitment . . . to the department of corrections with a recommendation for placement in an appropriate correctional facility or program." *Id.* § 46–18–

4

201(3)(a)(iv)(A); *see also id.* § 53–30–321. Montana law then allows the DOC to "provide community corrections facilities or programs for the rehabilitation of nonviolent felony offenders." *Id.* § 46–18–105. Consequently, "[a]dult corrections services consistent of . . . appropriate community-based programs for the placement, supervision, and rehabilitation of adult felons who meet the criteria developed by the [DOC] for placement . . . under intensive supervision . . . [or] in other appropriate programs." *Id.* § 53–1–202(2)(b)(ii), (iv). The DOC has the authority to administer the rules governing programming and release. *See id.* § 53–1–203(a)(iv).

Pursuant to its internal policies and guidelines, the DOC has a process to determine an "offender's appropriate placement." *See* DOC Operational Procedure Manual, PPD 4.6.300. Placement options include release to the community in a "conditional release" program. *Id.* at 4.6.302; *State v. Haagenson*, 232 P.3d 367, 372–73 (Mont. 2010) ("[U]nder Montana law, a term of conditional release or suspension of sentence is in lieu of a term of imprisonment and is part of the original sentence." (footnote omitted)). An offender then remains under this status until he or she completes the applicable prison term and then either "flat discharges" (no supervision to follow) or begins a probation term (supervision to follow). *See* 4.6.302 at 10; *Haagenson*, 232 P.3d at 373 ("An offender on conditional release . . . thus lives with the knowledge that a fixed sentence for a

5

definite term hangs over him." (internal quotation marks omitted)). Ultimately, once an offender is ordered into the custody of the DOC, the DOC has almost unfettered discretion over how a sentence is executed. *See Wright v. Mahoney*, 71 P.3d 1195, 1198–200 (Mont. 2003) (finding no state or federal constitutional right to be placed in a particular facility).

Thus, while Sullivan is correct that Montana's use of the terms "supervision" and "release" are ubiquitous and sometimes opaque, such imprecision is not sufficient grounds to shorten his state sentence by ten months.[2] Nor is the government's misuse of the term "parole." (*See* Doc. 16 at 6.) To be sure, there is some irony in two experienced federal criminal litigators arguing the nuances of a state sentencing regime; the briefing demonstrates both sides' unfamiliarity in this area. All that said, the basic premise of Sullivan's argument is that the DOC lacks the legal authority to release an offender into the community to complete his or her term of incarceration. While that argument lacks legal support as discussed above, it is also illogical in that it would implicitly give the DOC the unilateral authority to reduce the length of a court-imposed sentence. Thus, Sullivan's interpretation would give the DOC *more* authority, not less.

Contrary to Sullivan's argument, the period from March 5, 2012 to January

---

[2] Sullivan's concern about due process in the revocation of conditional release is a red herring. He was not revoked between March 5, 2012 and January 2, 2013.

6

2, 2013 qualifies as part of his custodial sentence, served on "conditional release" as authorized by statute. This status is reflected on Sullivan's correctional records. (*See* Docs. 13-6, 13-7.) Nor does Sullivan's argument warrant certification to the Montana Supreme Court or consideration of the rule of lenity. Montana law explicitly allows both the type of sentence imposed in this case and its execution as discussed above. *See* Mont. R. App. P. 15(2)(c) (requiring that answer "is not provided by . . . statute"); *United States v. Millis*, 621 F.3d 914, 917 (9th Cir. 2010) ("The rule of lenity applies only where after seizing everything from which aid can be derived, the Court is left with an ambiguous statute." (internal quotation marks omitted)). Because Sullivan's sentence did not expire until December 31, 2020—two months after firearms were discovered in his residence—he cannot show that he was not a prohibited person as a matter of law. (*See* Docs. 13-3, 13-4.)

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Sullivan's motion to dismiss the indictment (Doc. 13) is DENIED.

DATED this 23rd day of February, 2021.

_____
Donald W. Molloy, District Judge
United States District Court